**NATIONAL JEWISH ADVOCACY CENTER, INC.**
Matthew Mainen (*pro hac vice forthcoming*)
Matt@njaclaw.org
3 Times Square, Suite 517
New York, NY 10036
Phone: (301) 814-9007

**CARTER ARNETT PLLC**
Omer Salik (SBN 223056)
osalik@carterarnett.com
111 Pier Ave., Suite 101
Hermosa Beach, CA 90254
Phone: (214) 550-8188

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOV ALOOF,<br><br>          Plaintiff,<br><br>     v.<br><br>THE POKEMON COMPANY<br>INTERNATIONAL, INC.,<br><br>          Defendant. | CASE NO. 2:26-cv-02528<br><br>**COMPLAINT**<br><br><br>**JURY DEMAND** |

# COMPLAINT

Plaintiff Dov Aloof by and through undersigned counsel, hereby files this Complaint against The Pokemon Company International, Inc. for violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq*.; the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982; the Unruh Act, Cal Civ Code § 51 *et seq*.; and the Tom Bane Civil Rights Act Cal Civ Code § 52.1. Plaintiff seeks to recover monetary damages, attorneys' fees, and costs and obtain declaratory and injunctive relief.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331 as the action arises, inter alia, under 42 U.S.C. § 2000a, a law of the United States, and all other claims are part of the same case or controversy per 28 U.S.C. § 1367.

2.      Venue is proper in this Court pursuant to § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

3.      Plaintiff Dov Aloof is a Jewish, Israeli-American professional Pokemon player and Israel's lead advocate for equal access to Pokemon tournaments for Israelis, including others like him with U.S. citizenship.

4.      Defendant the Pokemon Company International, Inc. is a corporation headquartered in Bellevue, Washington.

## FACTS

5.      Plaintiff is an Israeli-American dual citizen and of the Jewish race, religion, and national origin. His maternal grandfather survived the Holocaust, immigrated to Israel, and fought in its 1948 War of Independence before relocating to the United States with Plaintiff's maternal grandmother. Plaintiff's mother and father, both born in the United States, met in Israel. In 2007, when Plaintiff was 10 years old, his family permanently relocated to Israel. Israel is the ancestral homeland

of the Jewish people and Plaintiff has spent the majority of his life in his ancestral homeland.

6.    Plaintiff is Israel's lead advocate for Israeli Pokemon players, including others like him with U.S. citizenship, to have equal opportunity in qualifying for the Pokemon World Championships. In short, qualifying for such tournaments depends on a player's ranking, which is impacted by participation in the Play! program's tournaments but not others. Pokemon tournaments in Israel do not impact ranking as they are conducted outside the auspices of Play! and are therefore essentially exhibition tournaments through which Israeli players may not climb the rankings.

7.    Pokemon is one of Plaintiff's largest interests in life. It has shaped a huge part of his personality and friendships, transcending ethnic animosities that plague the Middle East.  For example, he regularly interacts with Arab-Muslim Pokemon players in countries that do not or did not have diplomatic relations with Israel. On a personal level, Plaintiff is diagnosed with high functioning autism, and Pokemon has been an arena where he can be himself and, until the events described below transpired, not be judged for being a "weird, autistic, Jewish kid," for which he experienced severe bullying as a child.

8.    Plaintiff has occasionally sent electronic communications to agents and employees of Defendant advocating that Defendant find a way to grant Israel access to the Play! ranking system for local tournaments.

9.    Plaintiff first messaged Pokemon Support in 2018 requesting that Defendant provide Israel with rank-impacting tournaments. He received a generic response noting that Israel is not part of Play! and it is uncertain if and when things will change.

10.    On May 21, 2023, Plaintiff identified himself as "a current resident of Israel" in again writing to Pokemon Support about getting ranked tournaments in Israel. Support wrote back the next day, explaining that "Israel does not have a Play! Pokemon program."

11.    On November 10, 2024, Plaintiff wrote to Dave Schwimmer, Senior Manager of Defendant's Global Retail Programs, after Schwimmer accepted Plaintiff's request to connect on LinkedIn. Plaintiff identified himself as "a representative of Israel's Pokemon community" and advocated for Israel to get ranked tournaments in light of the fact that Defendant granted such to South Africa despite Israel also having a vibrant Pokemon community. Schwimmer did not respond. Plaintiff sent a quick follow up on November 25.

12.    On December 2, 2024, Plaintiff wrote again to Pokemon Support, expanding on what he previously wrote to Schwimmer. He received the same generic response as did his May 21, 2023 communication. He lamented this generic response in a follow up exchange, requested to speak to someone actually involved with Play!, but was again met with similar generic responses. He also sent follow ups on December 11 and 12 that did not receive responses.

13.    Plaintiff has also advocated for stamping out rampant antisemitism in the Pokemon community. For example, on January 15, 2025, he wrote to Pokemon Support that several players had "been sharing some very genocidal and racist posts on X" and as "competitor that lives in both America & Israel, this makes me very uncomfortable, especially when I have to attend events where these people show up." One high ranking player, whose Pokemon moniker is Chuppa Cross, "called for the ethnic cleansing of Jews." Specifically, he posted on X a meme that said "A two state solution? Idk, two Palestines seems like a lot, but ok." In other words, whereas the Two State Solution envisions an Israeli and Palestinian state living side-by-side, Chuppa called for eradicating Israel. Chuppa Cross's X profile featured an inverted red triangle, a Hamas symbol for murdering Jews. Plaintiff's message to Support also mentioned Raghav Malaviya, who is described in substantial detail below and is not Jewish or Israeli. Plaintiff noted "I don't feel safe competing at locals within the tristate area" with such players. The conduct of which Plaintiff complained is prohibited under Defendant's "Harassment & Bullying" policy, whereby players

may not "[u]se language . . . that discriminate[s] based on attributes such as race, religion, ethnic origin, [and] national origin." While Plaintiff received a response acknowledging his communication, he never received subsequent communications indicating an investigation was under way, such as requests for Plaintiff to provide additional screenshots or other evidence of antisemitism in the Pokemon community. Pokemon never disciplined Chuppa Cross or any others for antisemitism.

14.    On February 26, 2025, Plaintiff messaged Pokemon Support over additional concerns that South Africa was granted ranked tournaments, which harmed Israeli players as Israel and South Africa are in the same ratings region, whereby only the top players in a region may receive invitations to the World Championships. By granting South African Pokemon players the ability to accumulate ranking points on their home turf, Defendant disadvantaged Israeli players who instead must travel to other countries where Defendant has granted ranked tournaments. Plaintiff did not receive a reply.

15.    On March 9, 2025 Plaintiff tweeted a screenshot to Defendant on both its @Pokemon and @playpokemon accounts depicting Raghav Malaviya wearing a keffiyeh on one of Defendant's official livestream broadcasts. Plaintiff asked "How come TCPi is allowing the apparel of a terrorist sympathizer on stream? Hey, @Pokemon/@playpokemon. Do you endorse Hamas and their supporters? What the hell is this?"

16.    Expert testimony will establish that the keffiyeh, the article of clothing worn by Malaviya, is unmistakable antisemitic terrorist regalia. It is the equivalent for Israelis, if not Jews in general, as a white robe and hood for Black people. The keffiyeh was adopted and popularized by Palestinian terrorists as part of their informal uniform emerging in the 1930s as they ramped up hostilities against British authorities and a genocidal campaign, co-extensive with the Holocaust, against Jewish immigrants to the British Mandate of Palestine. As described by Palestinian

peace activist Bassem Eid, for example, "[t]he keffiyeh has a very specific political meaning, a violent one, linked to a series of terrorists with genocidal aspirations."[1] Even Al Jazeera concedes that the keffiyeh symbolizes "resistance" and "gained popularity during the Arab Revolt against British colonial rule in the 1930s."[2] As made clear by the Anti-Defamation League, the nation's oldest non-partisan antisemitism watchdog, "resistance" is "a euphemistic reference to the various terrorist groups responsible for violent attacks against Israel."[3]

17.    Malaviya has routinely worn a keffiyeh at official, in-person Pokemon events as well as online livestreams. Wearing such terrorist regalia is a violation of Defendant's "Harassment & Bullying" policy, whereby players may not "[u]se symbols. . . that discriminate[s] based on attributes such as race, religion, ethnic origin, [and] national origin." It is also a violation of its attire policy that prohibits "hate symbols," "symbols of prejudice," and images that "impl[y] acts of violence."

18.    Defendant has taken no disciplinary action against Malaviya for promoting antisemitic terrorism despite Plaintiff's pleas, and as described below, he continues to flaunt such terrorist regalia to this day.

19.    On May 19, 2025, Plaintiff sent a final message to Pokemon Support offering some ideas on how to make competition more fair for Pokemon players in the Middle East.

20.    On July 20, 2025, Plaintiff wrote to Schwimmer to see if he would be available to hear Plaintiff's advocacy for Israeli players at the upcoming Pokemon championship games. Schwimmer did not respond.

---

[1] https://blogs.timesofisrael.com/wtf-is-a-keffiyeh/

[2] https://www.aljazeera.com/news/longform/2023/11/20/palestine-symbols-keffiyeh-olive-branch-watermelon

[3] https://www.adl.org/resources/article/fight-until-victory-speakers-guests-declare-full-support-terrorism-peoples

21.　　On July 24, 2025, and only after his two prior messages to Pokemon Support were ignored, Plaintiff sent an email to Chris Brown, Defendant's Director of Global eSports and Events, politely expressing the frustration of Israeli Pokemon players that their tournaments do not yield ranking points and requesting a meeting. Plaintiff identified himself as "a representative and member of the Jewish Pokemon community." Plaintiff's email was under a dozen succinctly written sentences. He sent the same polite email to Leon Suh, Defendant's COO and CFO.

22.　　On August 4, Plaintiff sent Chris Brown a quick, 17-word follow up asking if he would be available to meet at the upcoming Pokemon World Championships.

23.　　On August 14th, 2025, Plaintiff attended the Pokemon World Championships in Anaheim, California as a spectator. Plaintiff contracted with Defendant for a Spectator Pass whereby in exchange for Plaintiff's consideration in the form of money, Defendant granted Plaintiff spectator access to the championships. In picking up his spectator badge, he asked the employees manning the customer support desk if they could forward him to an appropriate person to whom he can advocate opening up ranked tournaments to Israelis. After being passed to several people, Plaintiff was told to wait for someone capable of answering his inquiry. Instead, he was met by a member of security named Mark, who told him that he would give Plaintiff his spectator badge on the condition that he not "make any political outbursts or group protests," to which Plaintiff firmly agreed and clarified he simply wanted to have a private conversation with someone in management in pursuit of his advocacy for Israeli Pokemon enthusiasts. Mark was understanding and agreed to assist in getting Plaintiff a meeting. The two even exchanged phone numbers and Mark advised Plaintiff to contact him if anything went wrong. Thereafter, Plaintiff was issued his badge. Mark later texted Plaintiff "please reach out if you have any other issues." Plaintiff spent around $3,000 on Pokemon merchandise that day. He also played in some unranked tournaments.

24.    In the evening of August 14, Plaintiff sent Mark a polite text to inquire if any progress had been made in securing a meeting for a Plaintiff, who noted he was being pressured to move things along by Pokemon community members back in Israel. Mark advised Plaintiff that he and his colleagues pushed along Plaintiff's information to management and advised Plaintiff should expect to receive a response "soon."

25.    On August 15, Plaintiff watched the championship games and played in an unranked tournament. There, Plaintiff saw Raghav Malaviya making a "political" statement by wearing both a hat with a Palestinian flag and a keffiyeh, the latter being terrorist regalia as described above in detail.

26.    In the afternoon of August 15, Plaintiff sent Mark a quick follow up text, and Mark advised he would circle back after an afternoon meeting. Plaintiff advised that his ideal outcome would be to have a meeting with someone on August 17 and that he would not be on his phone from the evening of August 15 to the evening of August 16 because of "sabbath hours." Mark acknowledged Plaintiff's message about the sabbath.

27.    At or about 12:00 noon on August 16, while Plaintiff was waiting for a Pokemon card tournament to start, he approached the Security/Help Desk to follow up on whether someone from management would be available to discuss opening ranked tournaments to Israelis. Plaintiff was advised that someone would be there shortly to assist him. After waiting for twenty minutes, several members of security approached Plaintiff, including Mark from the day prior and a man in his 70s who falsely accused Plaintiff of violating their "no political outbursts or group protests" agreement of the day prior. Security then forced Plaintiff to relinquish his spectator badge. Plaintiff attempted, to no avail, to show them his disability identification card and explained that he is autistic and there must have been a misunderstanding as he was never told he could not try to secure a meeting with management. He also told them "you'll be hearing from my lawyers."

28.    Thereafter, Plaintiff went to the Customer Service desk, and told the individual behind the desk: "security took my badge because I tried asking another person about getting a meeting with management in order to get the geoblock on Israel lifted. They completely ignored my disability card and claimed that I violated our agreement, which I did not. *This is a violation of several civil rights laws, including discrimination against me for my nationality, religion* and disability status. I'm leaving my contact info contained on my business cards here and I'm going to give you guys until about 6 p.m. tonight to fix this, or I'm going to have to get my lawyers involved," or words to this effect. Plaintiff provided two business cards. Several hours later he returned to clarify which of the two listed emails were active, but before he could clarify this to Customer Service, he was met by security who escorted him off premises and threatened him with arrest if he returned.

29.    Plaintiff had booked a timeslot beginning at 1:30 p.m. on August 17 to purchase additional Pokemon souvenirs, which he could have done had he not been banned from the premises.

30.    Defendant removing and banning Plaintiff from the venue on grounds of violating a "no political outburst or group protests" agreement was rank pretext for antisemitic discrimination on grounds of race, religion, and national origin as Plaintiff neither engaged in a political outburst or group protest. Instead, he politely, quietly, and professionally sought assistance in advocating for Pokemon players from the world's only Jewish State to a company that embraces and showcases someone like Raghav Malaviya, who wears well-recognized, antisemitic terrorist regalia on Pokemon's official livestreams and did so at the tournament despite a purported "no political outburst" policy.

31.    Defendant's agents never told Plaintiff that he was forbidden from politely making inquiries of management. To the contrary, multiple agents of Defendant offered to assist in connecting Plaintiff to the right people, indicating that there was nothing inappropriate about Plaintiff's request for a meeting, and Plaintiff

8

1  followed up on these offers of assistance as any ordinary person would after an
2  appropriate amount of time had elapsed.

3       32.    On August 17, 2025, Plaintiff wrote to Schwimmer on Linkedin, noting
4  in full: "So they took my badge yesterday because I had the audacity to ask for a
5  meeting and they completely ignored my disability card. You have until noon to
6  come to the table and discuss this whole situation with me, *or I'm getting every civil*
7  *rights lawyer I know involved*. It's been a pleasure being ignored and *discriminated*
8  *against*." This message was sent in the same thread in which Plaintiff previously
9  identified himself as "a representative of Israel's Pokemon community" and sought
10 a meeting to advocate for Israeli Pokemon players.

11      33.    On August 29, 2025, less than two weeks after advising Defendant
12 through Schwimmer that he intended to vindicate his rights pursuant to civil rights
13 law, Defendant notified Plaintiff that he was indefinitely banned from official
14 Pokemon competition, writing in relevant part: "We have identified you have
15 directly contacted The Pokémon Company International employees via social media
16 and company email addresses, and that you attempted to contact them in person at
17 the 2025 Pokémon World Championships. We would like to stress that the
18 appropriate medium for reporting issues or requesting information to us is through
19 our support portal. Communicating directly with The Pokémon Company
20 International employees in person or through their social media and/or company
21 email addresses is not an appropriate way to report issues to us. This repeated and
22 unwanted contact is in violation of our Play! Pokémon Standards of Conduct Section
23 3.2 Harassment and Bullying. Due to the above violation, the Rules Compliance
24 team has determined it to be in our best interests that your eligibility to participate
25 in Play! Pokémon programs be suspended indefinitely. This suspension begins
26 today."

27      34.    In other words, Plaintiff was found "in violation" of Defendant's
28 Bullying and Harassment policy and severely disciplined because he contacted

Defendant's employees as part of his advocacy mission and to announce his plans to seek vindication under civil rights law—which is not bullying and harassment by any stretch of the imagination—but Raghav Malaviya, who is neither Jewish nor Israel and upon information and has never invoked civil rights law to Defendant, regularly violates this very policy by wearing antisemitic terrorist regalia at Defendant's official events and on official platforms, with Defendant's knowledge, but has never been disciplined.

35.    Plaintiff had contacted Schwimmer on social media, and in those communications Plaintiff made clear his connections to Israel, his advocacy mission, and ultimately his intent to vindicate his rights under civil rights law. Plaintiff only contacted Schwimmer after Schwimmer accepted Plaintiff's invitation to connect on LinkedIn, and at no point did Schwimmer advise Plaintiff that his overtures, centered on Jewish and Israeli advocacy, were unwanted. In fact, and to date, Schwimmer has not removed Plaintiff as a connection on LinkedIn and the line of communication technically remains open. As for contacting Defendant's employees via company email addresses, as noted Plaintiff sent an email to both Chris Brown and Leon Suh under a dozen sentences and a quick, 17-word follow up to Brown. Neither requested Plaintiff to cease communication.

36.    On November 15, 2025, Raghav Malaviya again appeared on an official Pokemon livestream, on its official YouTube channel, wearing his terrorist regalia keffiyeh.

# CAUSES OF ACTION

## COUNT I
### Violation of Title II of the Civil Rights Act of 1964
### Denial of Access to Place of Public Accommodation
### 42 U.S.C. § 2000a-2(a)

37.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

38.    42 U.S.C. § 2000a(a) reads: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin."

39.    For purposes relevant here, a place of public accommodation is statutorily defined as including, inter alia, a "place of exhibition or entertainment," 42 U.S.C. § 2000a(b), such as the Anaheim Convention Center, where the 2025 Pokemon World Championships were held, an event of exhibition and entertainment open to the general public.

40.    42 U.S.C. § 2000a-2(a) reads "No person shall . . . withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive any person of any right or privilege secured by section 2000a . . . of this title."

41.    Defendant unlawfully deprived Plaintiff of the full and equal enjoyment of the Anaheim Convention Center, and the 2025 Pokemon World Championships therein, due to his Jewish race, religion, and national origin, when Defendant banned Plaintiff from the venue for the duration of the event.

42.    As evidence of Defendant's discriminatory animus, its stated reasons for Plaintiff's ban, a purported violation of a "no political outburst or group protest" agreement was entirely false. Plaintiff did not engage in any outbursts or group protests, rendering this purported non-discriminatory justification rank pretext. Moreover, far worse than any political outbursts or group protests, Defendant

allowed  Raghav Malaviya, who is not Jewish or Israeli, to waltz around the venue adorned in unmistakable antisemitic terrorist regalia, which for Israeli people, if not Jews in general, is the equivalent of a white robe and hood as for Black people. Indicative of Defendant's further antisemitic animus, Malaviya regularly appears on Defendant's official livestreams and at other events in such regalia, despite Plaintiff advising Defendant of Malaviya's use of such regalia. Plaintiff's ban occurred in the midst of and was responsive to his advocacy for Israeli Pokemon players.

43.    As a direct and proximate result of Defendant's actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

44.    For this Count, Plaintiff seeks (1) injunctive relief to the fullest extent permissible by law requiring Defendant to immediately lift its ban on Plaintiff as applied to future Pokemon events and activities and (2) declaratory relief that Plaintiff's ban violated 42 U.S.C. § 2000a-2(a). Plaintiff additionally seeks costs and attorneys' fees.

**COUNT II**
**Violation of Title II of the Civil Rights Act of 1964**
**Unlawful Threats to Deter Access to Place of Public Accommodation**
**42 U.S.C. § 2000a-2(b)**

45.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

46.    42 U.S.C. § 2000a-2(b) reads "No person shall . . . intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a."

47.    On August 16, Defendant, through its agents, intimidated, threatened, coerced, or otherwise attempted such when it threatened Plaintiff with arrest if he returned during the 2025 championships to the convention center, a place of public accommodation that Plaintiff was entitled to enjoy without regard to his race, religion, or national origin under §2000a but was deprived of such enjoyment on

12

these grounds as described above.

48.    As a direct and proximate result of Defendant's actions, Plaintiff experienced considerable emotional distress, harm to his reputation, humiliation, and embarrassment.

49.    For this Count, Plaintiff seeks (1) injunctive relief to the fullest extent permissible by law prohibiting Defendant from making similar threats in the future and (2) declaratory relief that the threats violated 42 U.S.C. § 2000a-2(b). Plaintiff additionally seeks costs and attorneys' fees.

**COUNT III**
**Violation of Title II of the Civil Rights Act of 1964**
**Retaliation**
**42 U.S.C. § 2000a-2(c)**

50.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

51.    42 U.S.C. § 2000a-2(c) reads "No person shall . . . punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a."

52.    As noted, Plaintiff informed Defendant, through its employees and/or agents including but not limited to Dave Schwimmer, that Plaintiff would effectively seek refuge in civil rights law to vindicate the above described violations of his rights resulting in his ban from the 2025 Pokemon World Championships on facially pretextual grounds of violating a "no political outbursts or group protests" agreement. Plaintiff's right to attend the championships without regard to his race, religion, or national origin is guaranteed by statutes like Title II.

53.    Plaintiff's belief that Defendant discriminated against him on the basis of his Jewish race, religion, and national origin was reasonable given, inter alia, Defendant's (1) entirely false justification for terminating his attendance at the championships, in the midst of Plaintiff's prolonged advocacy centered solely on the world's only Jewish state and (2) its embrace of Raghav Malaviya, who is regularly adorned in antisemitic terrorist regalia at Defendant's official online and in-person

13

platforms and events, including at the championships, even after Plaintiff advised Defendant of Malaviya's use of such regalia.

54.     Less than two weeks later, and in retaliation for Plaintiff's protected activity of invoking civil rights law, Defendant punished Plaintiff by indefinitely banning him from official Pokemon events and activities.

55.     As a direct and proximate result of Defendant's actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

56.     For this Count, Plaintiff seeks (1) injunctive relief to the fullest extent permissible by law requiring Defendant to immediately lift Plaintiff's ban and (2) declaratory relief that Plaintiff's ban violated 42 U.S.C. § 2000a-2(c). Plaintiff additionally seeks costs and attorneys' fees.

**COUNT IV**
**Violation the Civil Rights Act of 1866**
**Interference with the Right to Contract**
**42 U.S.C. §1981**

57.     Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

58.     42 U.S.C. § 1981(a) mandates that regardless one's race, "All persons . . . shall have the same right . . . to make and enforce contracts."

59.     42 U.S.C. § 1981(b) reads: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

60.     Plaintiff had a contract with Defendant whereby in exchange for consideration Plaintiff paid to Defendant, Defendant was obligated to permit Plaintiff access to the 2025 Pokemon World Championships. However, and but for Plaintiff's Jewish race, Defendant terminated this contract and otherwise denied him the enjoyment of all benefits, privileges, terms, and conditions of the contractual

14
COMPLAINT

relationship by cutting short his attendance at the championships.

61.    As evidence of Defendant's discriminatory animus, its stated reasons for Plaintiff's ban, a purported violation of a "no political outburst or group protest" agreement was entirely false. Plaintiff did not engage in any outbursts or group protests, rendering this purported non-discriminatory justification rank pretext. Moreover, far worse than any political outbursts or group protests, Defendant allowed  Raghav Malaviya, who is not Jewish, to waltz around the venue adorned in unmistakable antisemitic terrorist regalia, which for Israeli people, if not Jews in general, is the equivalent of a white robe and hood as for black people. Indicative of Defendant's further antisemitic animus, Malaviya regularly appears on Defendant's official livestreams and at other events in such regalia, despite Plaintiff advising Defendant of Malaviya's use of such regalia. Plaintiff's ban occurred in the midst of and was responsive to his advocacy for Israeli Pokemon players.

62.    As a direct and proximate result of Defendant's actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT V**
**Violation the Civil Rights Act of 1866**
**Retaliation**
**42 U.S.C. §1981**

63.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

64.    The Supreme Court has "held that 42 U. S. C. § 1981 . . . prohibits not only racial discrimination but also retaliation against those who oppose it." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 354-55 (2013) (citation omitted).

65.    As noted, Plaintiff informed Defendant,  through its employees and/or agents including but not limited to Dave Schwimmer, that Plaintiff would effectively seek refuge in civil rights law to vindicate the above described violations of his rights resulting in his ban from the 2025 Pokemon World Championships on facially

pretextual grounds of violating a "no political outbursts or group protests" agreement. Plaintiff's right to attend the championships without regard to his Jewish race is guaranteed by statutes like the Civil Rights Act of 1866.

66.    Plaintiff's belief that Defendant discriminated against him on the basis of his Jewish race was reasonable given, inter alia, Defendant's (1) entirely false justification for terminating his attendance at the championships, in the midst of Plaintiff's prolonged advocacy centered solely on the world's only Jewish state and (2) its embrace of Raghav Malaviya, who is regularly adorned in antisemitic terrorist regalia at Defendant's official online and in-person platforms and events, including at the championships, even after Plaintiff advised Defendant of Malaviya's use of such regalia.

67.    Less than two weeks later, in retaliation for Plaintiff's protected activity of invoking civil rights law, Defendant punished Plaintiff by indefinitely banning him from all official Pokemon events and activities on facially pretextual grounds of a code of conduct violation.

68.    As a direct and proximate result of Defendant's actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

## COUNT VI
### Violation the Civil Rights Act of 1866
### Interference with the Right to Acquire Property
### 42 U.S.C. §1982

69.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

70.    42 U.S.C. §1982 reads: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

71.    Defendant unlawfully deprived Plaintiff of the right to purchase

property at the Anaheim Convention Center, and the 2025 Pokemon World Championships therein, due to his Jewish race, when Defendant banned Plaintiff from the venue for the duration of the event. At the time of his ban, Plaintiff had an upcoming registered timeslot to purchase Pokemon souvenirs.

72.     As evidence of Defendant's discriminatory animus, its stated reasons for Plaintiff's ban, a purported violation of a "no political outburst or group protest" agreement was entirely false. Plaintiff did not engage in any outbursts or group protests, rendering this purported non-discriminatory justification rank pretext. Moreover, far worse than any political outbursts or group protests, Defendant allowed  Raghav Malaviya, who is not Jewish or Israeli, to waltz around the venue adorned in unmistakable antisemitic terrorist regalia, which for Israeli people, if not Jews in general, is the equivalent of a white robe and hood as for black people. Indicative of Defendant's further antisemitic animus, Malaviya regularly appears on Defendant's official livestreams and at other events in such regalia, despite Plaintiff advising Defendant of Malaviya's use of such regalia.

73.     As a direct and proximate result of Defendant's actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT VII**
**Violation the Civil Rights Act of 1866**
**Retaliation**
**42 U.S.C. §1982**

74.     Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

75.     The Supreme Court has long recognized that "§ 1982 encompasses retaliation claims." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 447, 128 S. Ct. 1951, 1955 (2008) (discussing *Sullivan v. Little Hunting Park, Inc*., 396 U.S. 229, 90 S. Ct. 400, 24 L. Ed. 2d 386)).

76.    As noted, Plaintiff informed Defendant, through its employees and/or agents including but not limited to Dave Schwimmer, that Plaintiff would effectively seek refuge in civil rights law to vindicate the above described violations of his rights resulting in his ban from the 2025 Pokemon World Championships on facially pretextual grounds of violating a "no political outbursts or group protests" agreement. Plaintiff's right to attend the championships without regard to his Jewish race is guaranteed by statutes like the Civil Rights Act of 1866.

77.    Plaintiff's belief that Defendant discriminated against him on the basis of his Jewish race was reasonable given, inter alia, Defendant's (1) entirely false justification for terminating his attendance at the championships, in the midst of Plaintiff's prolonged advocacy centered solely on the world's only Jewish state and (2) its embrace of Raghav Malaviya, who is regularly adorned in antisemitic terrorist regalia at Defendant's official online and in-person platforms and events, including at the championships, even after Plaintiff advised Defendant of Malaviya's use of such regalia.

78.    Less than two weeks later, in retaliation for Plaintiff's protected activity of invoking civil rights law, Defendant punished Plaintiff by indefinitely banning him from all official Pokemon events and activities on facially pretextual grounds of a code of conduct violation.

79.    As a direct and proximate result of Defendant's actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT VIII**
**Violations of the Unruh Act**
**Denial of Access to Place of Public Accommodation**
**Cal Civ Code § 51 et seq.**

80.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

81.    Cal Civ Code § 51(b) reads: "All persons within the jurisdiction of this

18

state are free and equal, and no matter what their . . . race, . . . religion, ancestry, [or] national origin . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

82.     The 2025 Pokemon World Championships were held the Anaheim Convention Center, a business establishment.

83.     Cal Civ Code § 52(a) reads: "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51."

84.     Defendant unlawfully deprived Plaintiff of the full and equal accommodations, advantages, facilities, privileges, and services of the Anaheim Convention Center, and the 2025 Pokemon World Championships therein, due to his Jewish race, ancestry, religion, and national origin, when Defendant banned Plaintiff from the venue for the duration of the event.

85.     As evidence of Defendant's discriminatory animus, its stated reasons for Plaintiff's ban, a purported violation of a "no political outburst or group protest" agreement was entirely false. Plaintiff did not engage in any outbursts or group protests, rendering this purported non-discriminatory justification rank pretext. Moreover, far worse than any political outbursts or group protests, Defendant allowed Raghav Malaviya, who is not Jewish, to waltz around the venue adorned in unmistakable antisemitic terrorist regalia, which for Israeli people, if not Jews in general, is the equivalent of a white robe and hood as for black people. Indicative of Defendant's further antisemitic animus, Malaviya regularly appears on Defendant's official livestreams and at other events in such regalia, despite Plaintiff advising

Defendant of Malaviya's use of such regalia. Plaintiff's ban occurred in the midst of and was responsive to his advocacy for Israeli Pokemon players.

86.    As a direct and proximate result of Defendant's actions, Plaintiff experienced considerable financial loss, emotional distress, harm to his reputation, humiliation, and embarrassment.

**COUNT IX**
**Violations of the Tom Bane Civil Rights Act**
**Unlawful Threats to Deter Enjoyment of Rights**
**Cal Civ Code § 52.1**

87.    Plaintiff incorporates all prior paragraphs as if they were stated fully herein.

88.    Cal Civ Code § 52.1(b) establishes liability for someone who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment . . . of rights secured by the . . . laws of the United States, or of the rights secured by . . . or laws of this state."

89.    Cal Civ Code § 52.1(c) reads: "Any individual whose exercise or enjoyment of rights . . . has been interfered with, or attempted to be interfered with, as described in subdivision (b), may institute and prosecute in their own name and on their own behalf a civil action."

90.    On August 16, Defendant, through its agents, interfered with Plaintiffs rights secured by all above stated causes of action, and it did so by threat, intimidation, and coercion by telling Plaintiff he would be arrested if he returned during the 2025 championships to the convention center.

91.    As a direct and proximate result of Defendant's actions, Plaintiff experienced considerable emotional distress, harm to his reputation, humiliation, and embarrassment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

A.    That the Court enter judgment against Defendant and award damages;

20

COMPLAINT

B.      That the Court enter judgment in favor of Plaintiff against Defendant for all equitable relief available under law as specifically stated in Counts I, II, and III;

C.      That the Court order Defendant to pay compensatory damages;

D.      That the Court order Defendant to pay punitive damages;

E.      That the Court order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees, and costs; and

F.      That the Court order Defendant to pay pre-judgment and post-judgment interest as provided by law.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all claims against Defendants.

Respectfully submitted,

Date: March 10, 2026

NATIONAL JEWISH ADVOCAY CENTER, INC.

By:*/s/ Matthew Mainen*
Matthew Mainen (*pro hac vice forthcoming*)
Matt@njaclaw.org
3 Times Square, Suite 517
New York, NY 10036
Phone: (301) 814-9007

CARTER ARNETT PLLC

By: */s/ Omer Salik*
Omer Salik (SBN 223056)
osalik@carterarnett.com
111 Pier Ave., Suite 101
Hermosa Beach, CA 90254
Phone: (214) 550-8188

Attorneys for Plaintiffs